IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| FRANKENMUTH MUTUAL INSURANCE COMPANY | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Civil Action No. _____<br>) |
| LANCE E. BLAIR,<br>Individually and d/b/a LEGACY CONSTRUCTION | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes now the Plaintiff, Frankenmuth Mutual Insurance Company ("Frankenmuth"), pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, and for its Complaint for Declaratory Judgment, alleges as follows:

### I. THE PARTIES

1. Frankenmuth is an insurance company incorporated under the laws of the State of Michigan and with its principal place of business in Michigan, which is authorized to transact business in the State of Tennessee. Thus, Frankenmuth is a citizen and resident of the State of Michigan for purposes of 28 U.S.C. § 1332.

2. Lance Blair ("Blair") is a resident of the State of Tennessee doing business as a sole proprietor building contractor, under the name of Legacy Construction, with offices at his home located at 622 Admiral Farragut Drive, Seymour, Tennessee 37865. Blair may be served with process at 622 Admiral Farragut Drive, Seymour, Tennessee 37865. Thus, Blair is a citizen and resident of the State of Tennessee for the purposes of 28 U.S.C. § 1332.

## II.  VENUE AND JURISDICTION

3. Frankenmuth incorporates by reference the allegations contained in paragraphs 1 through 3.

4. This case is brought pursuant to the Declaratory Judgment Act as codified in 28 U.S.C. § 2201 and Fed. R. Civ. P. 57. Jurisdiction is proper within this Court pursuant to 28 U.S.C. § 1332 as the parties to this action are citizens and residents of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. The issues involved in this case arise out of an underlying lawsuit, referenced in more detail below, which seeks damages in excess of $75,000.00, as well as an insurance contract with limits in excess of One Million Dollars negotiated and delivered in the Eastern District of Tennessee. Therefore, jurisdiction within the U.S. District Court for the Eastern District of Tennessee is proper.

5. As will be more fully set forth below, Frankenmuth issued policy number CPP 6276835 ("the policy") for the policy period of January 1, 2019, through January 1, 2020. A true and accurate copy of the policy is attached hereto as **Exhibit A.** The policy was negotiated and delivered in Sevier County, Tennessee. Because the policy that is the subject of this declaratory judgment action was negotiated and delivered in the Eastern District of Tennessee, venue is proper in this Court and in this Division pursuant to 28 U.S.C. §§ 1391 and 123, respectfully.

## III.  FACTS

6. Frankenmuth incorporates by reference the allegations contained in paragraphs 1 through 6.

7. This action arises out of a Second Amended Complaint filed against Blair

by Erie Insurance Company ("Erie"), Claire Rauser, and Carol Rauser ("the Rausers") filed in the Maryville Circuit Court in Blount County, Tennessee ("the Erie Complaint") under Docket No. L-20758 ("the SAC"). A true and exact copy of the Underlying Complaint is attached hereto as **Exhibit B**.

8. The SAC alleged that on November 18, 2015, the Rausers entered into a contract with A&M Building and Contracting, Inc. ("A&M") to construct a new custom home located at 5097 Allegheny Cove Way, Maryville, Tennessee 37803 ("the home). See Ex. B, ¶ 15.

9. The SAC alleged that A&M recommended that the Rausers involve Blair as an additional contractor to assist A&M in building the home. See Ex. B, ¶ 18.

10. The SAC asserted that the home took several years to complete, and a Certificate of Occupancy was issued on May 24, 2018. See Ex. B, ¶¶ 17, 19.

11. However, it was alleged that the Rausers' house was destroyed by a fire on the night of March 3 and 4, 2019. See generally Ex. B.

12. According to the SAC, the home had a fireplace at the back of the home, which was allegedly the area where the fire originated. See Ex. B, ¶ 23.

13. Specifically, the SAC alleged that the Rausers started a fire in the fireplace and later noticed "a tiny amount of smoke" to the right of the fireplace and called the fire department. See Ex. B, ¶ 53.

14. Beginning on March 8, 2018, the Rausers had a homeowner insurance policy with Erie. See Ex. B, ¶ 19.

15. The SAC alleged that the home and its contents were entirely destroyed by the fire. See Ex. B, ¶ 72.

16. Erie issued payments to the Rausers under the homeowner insurance policy and subsequently filed the SAC to seek subrogation against Blair and several other defendants. See generally Ex B.

17. The SAC alleged that, in addition to problems with the fireplace, "the exterior, or 'cladding,'" to the home" exacerbated the fire and damage to the home. See Ex. B, ¶¶ 145, 379.

18. Specifically, the SAC alleged that the cladding used on the home was intended to look like it was made of large brick, but was actually made of "highly flammable Styrofoam." See Ex. B, ¶¶ 145, 149.

19. The SAC asserted the following causes of action against Blair, based in part on the use of the cladding: (1) breach of third-party beneficiary contract, (2) negligence, and (3) gross negligence. The SAC seeks compensatory damages against Blair. See generally Ex B.

20. Beginning with the policy inception on January 1, 2019, Frankenmuth was the liability insurer for Blair under the policy.

21. The policy provided commercial general liability coverage only in accordance with the policy terms, definitions, conditions, and exclusions.

22. Frankenmuth is presently defending Blair in the SAC under reservation of rights.

23. Frankenmuth alleges and avers that an actual controversy exists between itself and Blair, and that this Court is vested with the power in the instant case to declare and adjudicate the rights and legal relationships of Frankenmuth and Blair with reference to the issues raised herein.

# IV. DECLARATORY RELIEF SOUGHT

24. Frankenmuth incorporates by reference the allegations contained in paragraphs 1 through 24.

25. Frankenmuth alleges and avers that the policy does not provide coverage for any of the claims asserted against Blair or the damages claimed against Blair in the SAC.

26. The CGL provided the following insuring agreement under Coverage Form, CG 00 01 (12-07):

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1.    Insuring Agreement**

        a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result. But:

            (1)    The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

            (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

                No other obligation or liability to pay sums or perform acts or service was covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

        b.    This insurance applies to 'bodily injury' or 'property damage' only if:

            (1)    The 'bodily injury' or 'property damage' is caused by

      an 'occurrence' that takes place in the 'coverage territory.'

     (2) The 'bodily injury' or 'property damage' occurs during the policy period; and

     (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who is An Insured and no 'employee' authorized by you to give or receive notice of an 'occurrence' or claim, knew that the 'bodily injury' or 'property damage' had occurred, in whole or in part. If such a listed insured or authorized 'employee' knew, prior to the policy period, that the 'bodily injury' or 'property damage' occurred, then any continuation, change or resumption of such 'bodily injury' or 'property damage' during or after the policy period will be deemed to have been known prior to the policy period.

   c. 'Bodily injury' or 'property damage' which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who is An Insured or any 'employee' authorized by you to give or receive notice of an 'occurrence' or claim, includes any continuation, change or resumption of that 'bodily injury' or 'property damage' after the end of the policy period.

   d. 'Bodily injury' or 'property damage' will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any 'employee' authorized by you to give or receive notice of an 'occurrence' or claim:

     (1) Reports all, or any part, of the 'bodily injury' or 'property damage' to us or any other insurer;

     (2) Receives a written or verbal demand or claim for damages because of the 'bodily injury' or 'property damage'; or

     (3) Becomes aware by any other means that 'bodily injury' or 'property damage' has occurred or has begun to occur.

   e. Damages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury'.

27. In order for this insuring agreement to apply, there must be "bodily injury" or

"property damage" caused by an "occurrence". The policy defined these terms, as follows:

**SECTION V – DEFINITIONS**

3. 'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

*****

13. 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*****

17. 'Property damage' means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

    For the purposes of this insurance, electronic data is not tangible property.

    As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

28. Frankenmuth avers and alleges that damages to remedy faulty workmanship do not qualify as "property damage" under the policy or applicable law. In addition, Frankenmuth avers and alleges that there is no coverage for claims for purely economic losses. breach of contract claim, as general liability policies are not intended to cover the insureds contractual liability for economic loss because its work was not that for which the damaged person bargained.

29. Thus, Frankenmuth alleges that it does not have a duty to defend or indemnify Blair for any claims or damages alleged in the SAC.

30. In addition, and/or in the alternative, Frankenmuth avers and alleges that the claims and damages sought in the SAC would be excluded from coverage under the following exclusions:

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an 'insured contract,' provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement; Solely for the purposes of liability assumed in an 'insured contract', reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of 'bodily injury' or 'property damage', provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same 'insured contract'; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

*****

**j.  Damage to Property**

'Property damage' to:

*****

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

*****

Paragraph (6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard'.

******

**k.  Damage to Your Product**

'Property damage' to 'your product' arising out of it or any part of it.

**l.  Damage to Your Work**

'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage to Impaired Property or Property Not Physically Injured**

'Property damage" to 'impaired property' or 'property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work;' or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use.

30. In addition, the policy contained Endorsement CG 2186 12 04, which provided the following "Exterior Insulation and Finish Systems" exclusion:

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
>
> **Exclusion -- Exterior Insulation And Finish Systems**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> A. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:
>
>   1. The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or
>
>   2. "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.
>
> B. The following definition is added to the **Definitions** Section:
>
> "Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:
>
>   1. A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;
>
>   2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

3. A reinforced or unreinforced base coat;

4. A finish coat providing surface texture to which color may be added; and

5. Any flashing, caulking or sealant used with the system for any purpose.

31. Frankenmuth avers and alleges that there is no coverage to Blair for any of the claims or damages alleged against it in the SAC by operation of the above referenced exclusions.

32. Frankenmuth avers and alleges that this exclusion applies to bar coverage for any and all damage arising out of, caused by, or attributable to the cladding. Because the SAC alleged that the damage was caused by the cladding, there is no coverage for any of the claims and damages asserted in the SAC.

33. Consequently, Frankenmuth avers that it owes no coverage obligations (defense or indemnity) to Blair for any of the allegations alleged claims or damages sought in the SAC.

34. Thus, Frankenmuth requests a declaration from the Court that the policy of insurance it issued to Blair does not provide coverage to it for any damages awarded against him in the SAC and that Frankenmuth is entitled to withdraw counsel provided under reservation of rights.

**WHEREFORE,** the plaintiff, Frankenmuth Mutual Insurance Company, prays as follows:

1. That the defendant be required to appear and answer herein;

2. That this Court adjudicate and declare that Frankenmuth is not obligated to defend or indemnify Blair for the claims and damages sought in the SAC;

3. That this Court adjudicate and declare that Frankenmuth may withdraw counsel appointed for Blair under Reservation of Rights; and

4. For such further legal and equitable relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Parks T. Chastain*
**PARKS T. CHASTAIN**
Registration No. 13744
DIRECT: (615) 630-7717
(615) 256-8787, Ext. 114
pchastain@bkblaw.com
**HANNAH J. LEIFEL**
Registration No. 38632
DIRECT: (615) 630 – 7722
(615) 256-8787, Ext. 152
Attorneys for Plaintiff, Frankenmuth, a Mutual Insurance Company

**BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC**
545 Mainstream Drive, Suite 101
Nashville, TN 37228
(615) 256-8787